| | |
|---|---|
| KEVIN R. HALL, | ) |
| | ) |
| Movant | ) |
| | ) 2:02-cr-00031-DBH |
| v. | ) 2:10-cv-00257-DBH |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent | ) |

**RECOMMENDED DECISION ON 28 U.S.C. § 2255 MOTION**

Kevin Hall is pursuing 28 U.S.C. § 2255 relief after being convicted in 2003 of one

federal drug offense, 163 counts of money laundering, and four counts of tax evasion.  As the

First Circuit summarized in its decision on Hall's first direct appeal, "The 163 counts essentially

involve loans to friends and colleagues and related transactions, purchases of cars and other

vehicles, expenditures to renovate property, and establishing a construction business."  United

States v. Hall, 434 F.3d 42, 50 (1st Cir. 2006) (Hall I).  A consequence of this first direct appeal

was that the First Circuit remanded for resentencing in light of United States v. Booker, 543 U.S.

220 (2005).  See Hall I, 434 F.3d at 48-49.  As a result, Hall's sentence was reduced from 151

months to 120 months.  Hall took another direct appeal to no avail.  See United States v. Hall,

557 F.3d 15, 22 (1st Cir. 2009) (Hall II), cert. denied, 129 S.Ct. 2849 (2009).

Hall's 28 U.S.C. § 2255 pleadings set out Sixth Amendment claims of ineffective

assistance of counsel.[1]  Hall was initially represented by Attorney Walter McKee who was

replaced by Attorney William Maselli and that representation proceeded through trial and into

early sentencing-related negotiations.  After Attorney Maselli withdrew, Attorney MacColl

---

[1]    Hall does try to shoehorn complaints about governmental misconduct into his request for relief even though
he has had two direct appeals to the First Circuit.  I briefly address that effort at the end of the recommended
decision.

represented Hall through the sentencing phase and on the two direct appeals. Hall does challenge the adequacy of these efforts on the grounds that performance fell below the Strickland v. Washington, 466 U.S. 668 (1984) Sixth Amendment standard. In an earlier order I granted Hall leave to amend his 28 U.S.C. § 2255 motion (Doc. Nos.213 & 214)[2] and I address the merits of those added concerns below.

## DISCUSSION

Hall's convictions arise from a prolonged undertaking of marijuana dealing and related financial transactions in Maine between 1995 and 1999 that culminated in his 168-count indictment and his convictions and sentencing in 2003. Hall was involved with several individuals in his drug and money transactions, many of whom did testify at Hall's criminal proceedings. A key trial witness for the prosecution was John Redihan.[3]

## A. Ineffective Assistance of Counsel Standard and Competing Affidavits

Hall's Sixth Amendment ineffective assistance claims are governed by Strickland v.

---

[2] The United States filed no opposition to that motion. For his part Hall mistakenly claims that this motion was never ruled on (Reply at 1); the record indicates that a copy of this endorsement order granting the motion was mailed to Hall.

[3] With respect to some of the facts underlying Hall's conviction, on Hall's first appeal, the First Circuit Court of Appeals responded to Hall's argument that a "there was insufficient evidence of his participation in a drug trafficking conspiracy because the government established only that he purchased marijuana from another individual and resold it." 434 F.3d at 49. Hall insisted that "proof of a buyer/seller relationship [was] not sufficient to establish a drug conspiracy." Id. The Panel summarized:

> It is enough to say that Hall understates the strength of the government's evidence. There was proof that from 1995 to 1999 Hall bought large amounts of marijuana from an individual named John Redihan. Redihan testified that he was aware that Hall's purpose was to resell the drugs for profit and that, on occasion, he assisted Hall in these efforts. See United States v. Berrios, 132 F.3d 834, 841-42 (1st Cir.1998) (concluding that there was sufficient proof of a distribution conspiracy where seller knew that buyer was purchasing drugs for the purpose of selling it to others and intended to facilitate the resales). Moreover, Hall enlisted several other individuals to help him in the storage, preparation, and selling of the drugs. For example, an individual named William Lee sold marijuana for Hall, and a married couple, George and Brenda Elliot, assisted Hall by letting him store drugs in their home, helping him weigh the drugs, picking up marijuana deliveries from Redihan, and participating in Hall's debt collection efforts. This evidence sufficiently established Hall's participation in a conspiracy to distribute marijuana.

Id. With respect to the money laundering Counts, the First Circuit described this conduct at great length. See id. at 50- 54.) The factual background need not be repeated here to address Hall's § 2255 claims.

Washington, 466 U.S. 668 (1984) and Hill v. Lockhart, 474 U.S. 52 (1985). "In order to prevail," Hall "must show both that counsel's representation fell below an objective standard of reasonableness and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland, 466 U.S. at 688, 694). "In other words," Hall "must demonstrate both seriously-deficient performance on the part of his counsel and prejudice resulting there from." Id.

"Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Not only does Hall refer several times to this Court's familiarity with the proceedings in trumpeting the merits of his claim, it is clear that many of his § 2255 claims should ultimately be weighed by the presiding judge with regards to whether any further inquiry might be warranted.

As a consequence of my earlier request for supplementation of its response, the United States has filed several exhibits, including the affidavits of Attorney William Maselli (Doc. No. 252-14) and an Assistant United States Attorney specializing in tax litigation, John Chapman, Jr. (Doc. No. 252-13) who was privy to the pre-sentencing interactions between Hall and the Assistant United States Attorney (AUSA) responsible for the criminal prosecution. Hall has filed his own affidavit with his comprehensive reply. (Doc. No. 255-1.) Hall describes the Maselli and Chapman affidavits as "clearly products of information re-introduced by the Government and not from memory" and as being evidence of a "collaborative effort on the part of all parties in opposition, i.e., Maselli, Chapman, and the AUSA." (Reply at 4.)

3

"To progress to an evidentiary hearing, a habeas petitioner must do more than proffer gauzy generalities or drop self-serving hints that a constitutional violation lurks in the wings." David v. United States, 134 F.3d 470, 478 (1st Cir. 1998). The question that needs to be answered here is whether or not Hall can demonstrate his entitlement to an evidentiary hearing on one or more of his claims based on his Sixth Amendment argument and the facts asserted in these affidavits and the evidence in the record. See Moreno-Morales v. United States, 334 F.3d 140, 145 (1st Cir. 2003) (burden on the § 2255 movant to demonstrate entitlement to an evidentiary hearing).

**B. Sixth Amendment Claims Regarding Maselli's Performance**

In its initial response to Hall's 28 U.S.C. § 2255 motion the United States read Hall's pleading as disavowing any claims against Attorney Maselli. I entered an order on March 11, 2011, asking the United States to supplement its answer to the § 2255 motion and summarized the claims related to Maselli's performance that I concluded he was pressing. The United States has supplemented its response and Hall has filed a reply to both of the United States' responsive pleadings. In his reply Hall does not take issue with my summary of the claims related to Maselli's conduct although he does expand on the facts and theory underlying these grounds. For the most part in the following discussion I focus on Hall's articulation of his claims in his responsive memorandum as being his last attempt to clarify and shore up his claims against Maselli.[4]

_____

[4]      Hall has marked as his Exhibit E a three-page letter by Maselli dated May 21, 2003, setting forth the reasons that Maselli was seeking court approval of his motion to withdraw as counsel. (Doc. No. 255-5.) On its face it is a thorough and frank report of Maselli's frustration with Hall's course of conduct during the pre-trial and pre-sentencing portions of his representation of Hall. It is tempting to set forth the contents of this correspondence in this decision but it is sufficient to summarize that it is a testimony to Maselli's concern that his client, from the outset of investigation of the case, was refusing to take responsibility and laying blame on others for both his prior misconduct and the course of his prosecution. Nothing Hall has presented to the court in this 28 U.S.C. § 2255

1. **Maselli and the Plea Issues**

   a. **Claim parameters**

   i. ***Failing to make an independent examination of the facts and laws relevant to entering a plea***

In his reply to the United States' supplemental response Hall articulates his theory as to why Maselli's performance was deficient when it came to analyzing the general plea concerns in Hall's case:

> This was a complex case involving 170 counts and five separate Federal Statutes. Careful analysis and review should have been undertaken by counsel and a fully detailed and documented explanation of the statutes, existing precedent, and plausible defenses based on the evidence should have been afforded the petitioner so as to allow him to make an intelligent and informed decision.
> A review of Maselli's billing log, attached as exhibit C demonstrates that counsel for the petitioner did not engage in any meaningful review of the applicable statutes, or the individual counts as charged in the indictment. In fact, Maselli[] never researched multiple conspiracies, variance, or limitation issues until 01-08-2003, despite trial having been set for October, 2002., and despite a proffered plea agreement for which he should have been fully prepared to provide his judgment on based on his review of the facts and applicable laws and existing First Circuit precedent.

(Reply at 5.) On October 29, 2002, Hall complains, Maselli "spent fifteen minutes analyzing the governments proffered plea agreement. On 11-13-2002 he spent one half hour drafting the counter-offer to present to the AUSA, the very day the offer was set to expire." (Id. at 6.)

Hall describes Maselli as struggling with the concepts of forfeiture and the basics of conspiracy law. (Id.) He opines: "Maselli's affidavit does not suggest he attempted at any time to discourage the forfeiture and statute of limitation issues petitioner had been led to believe

---

proceeding undermines Maselli's characterization of Hall's approach to his defense in this letter. Rather, all things considered, he seems to be continuing with his pattern of prevarication.

were legitimate defenses." (Id. at 7.)

> ### ii. *Failing to provide Hall with an accounting of fees during the plea considerations and seeking to obtain title property that would be subject to forfeiture under the proposed plea agreement*

Hall faults Maselli for not giving him an account of fees during the plea negotiations. In his reply to the United States, Hall clarifies that he thinks that if he had entered into a plea agreement this could have potentially resulted in a refund of fees advanced to Maselli. (Reply at 8.) Hall states that the advice about whether or not to proceed via a guilty plea must be viewed in conjunction with the allegation that Maselli attempted to gain title to real estate owned by Hall that was listed as a substitute asset in the United States' proffered plea agreement, thus evidencing, in Hall's view, Maselli's self-interest in not concluding the guilt determination short of trial. (Id.)

> ### iii. *Not advising Hall of the option of an 'open plea'*

With respect to the prospects of an open plea in his case, Hall disputes the United States' assertion that Hall never considered the option of an open plea. He notes that Judge Hornby stated at sentencing: "[A]cceptance of responsibility could easily have been accomplished by Mr. Hall. He could have simply pleaded strait guilty, that would have been accepting responsibility." (Oct. 1, 2003, Sentencing Tr. at 348; Reply at 17.) Hall highlights that Judge Hornby gave no indication that the obstruction of justice adjustment was a factor in denying the two-level acceptance of responsibility adjustment. (Reply at 17.) He also notes that Maselli's affidavit suggests that no discussion or advice was given concerning an 'open plea' option. (Id. at 18.)

> ### iv. *Not encouraging Hall to accept the United States' proposed plea agreement "despite being fully aware of overwhelming evidence of guilt and no plausible defense"*

In another plea-related discontent Hall states that if he had been "[f]ully advised of the

futility of trial, and the benefits of entering into a plea agreement with the government" he "would have indeed accepted the proffered plea agreement." (Reply at 6.) He states: "The question of whether an attorney has an obligation to encourage his client to accept a proffered plea agreement when it is in his best interest to do so is a matter of first impression in the First Circuit." (Id. at 18.) Hall maintains that "Maselli did not offer any advice concerning whether to accept or reject the proffered plea agreement, nor was there any discussion concerning the advantages or disadvantages [of] entering into a plea agreement with the government." (Id. at 19.) Hall insists that there is evidence that "Maselli both contemplated and encouraged trial" as a consequence of his misguided understanding of conspiracy law that without the testimony of Redihan there was a legitimate defense that there was no conspiracy as charged in the indictment. (Id. 19.) Hall states that on May 21, 20003, Maselli informed him that he was moving to withdraw as counsel and he "admonished Hall for, inter-alia, not taking the government to trial in July before they were fully prepared[5] and for implicating Redihan to the government." (Id. at 20; Mov.'s Ex. E.)

> ***v.*** ***Failing to provide Hall with information relating to Hall's tax obligations as they related to his assets in order to make an informed decision about whether or not to accept the United States' proposed plea agreement***

With regards to Maselli's performance and Hall's tax liability it is Hall's contention that although he asked Maselli to ascertain his tax liability to see if there was something he could work with, Maselli responded that he did not know and he could not get the answers. (Reply at 20.) Although Agent Guigere testified at sentencing that Hall's taxes were never part of the plea proposal because IRS practice is to assess civil liabilities based on net worth after the criminal

---

[5] This decision would have been made under Attorney McKee's auspices. Maselli commenced his representation in late July 2002.

proceedings, Hall notes that on cross-examination Guigere testified that on some occasions civil

tax liabilities are resolved with negotiations in the criminal case.  (Id. at 21; Oct. 1, 2003,

Sentencing Tr. at 277.)  He testified that in Hall's case the conversation did not go on long

enough for this type of resolution and he was not aware that Maselli made any effort in this

direction.  (Oct. 1, 2003, Sentencing Tr. at 277.)  Guigere also testified on the question of

whether he remembered Maselli made any subsequent efforts to determine Hall's liability for

back taxes and the agent responded that he did not remember any substantive conversation with

regards to that (id. at 270) or any discussion about entering into a payment plan with the IRS (id.

at 276).

### b.  Discussion of Plea-Related Claims

There is no question: "Before deciding whether to plead guilty, a defendant is entitled to

'the effective assistance of competent counsel.'"  Padilla v. Kentucky, 559 U.S. __, __, 130 S.Ct.

1473, 1481 (2010) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  Counsel has a

"critical obligation ... to advise the client of 'the advantages and disadvantages of a plea

agreement."  Id. at 1484 (quoting Libretti v. United States, 516 U.S. 29, 50-51 (1995)).  See also

Parsley v. United States, 604 F.3d 667, 671-72 (1st Cir. 2010).

With regards to all these plea-related arguments the United States offers a good dose of

speculation as to what Hall himself probably knew about the potential witnesses through pretrial

discovery, his awareness that the United States had done very thorough pre-trial discovery, his

cognizance of his tax liability exposure, and a familiarity with the pertinent legal principles.

(Suppl. Resp. at 16-17.)  It cites Maselli's affidavit that indicates that he did review the discovery

materials from Hall's first attorney and the prosecutor with Hall and had multiple discussions

with Hall about this information.  (Id. at 17.)  With regards to the accounting of fees during the

8

plea stage and the alleged negotiation over title to property, the United States points out that there may be a contractual and/or bar rule obligation to so disclose but there is no precedent setting forth a Sixth Amendment premised responsibility. (<u>Id.</u> at 18.) With respect to the property negotiations, Hall only asserts that Maselli made an inquiry about the property and there is no evidence that it made an impact on his performance. (<u>Id.</u> at 19.)

At this stage of a drawn-out 28 U.S.C. §2255 proceeding, it is Hall's burden to demonstrate a tenable Sixth Amendment claim as to each of his theories of relief. I am not finding evidence in this record that supports a 28 U.S.C. § 2255 theory of relief pertaining to the plea negotiations in which Hall would have/could have enter into a plea agreement with the United States that was more amendable to Hall than the agreement presented in Document No. 252-8. Hall had his opportunity to put his best foot forward with regards to his evidentiary support for these factually nuanced plea-related 28 U.S.C.§ 2255 claims. His affidavit and exhibits do not prove the point.

As for the possibility of an 'open plea' the United States asserts that there is no evidence that Hall considered this option in light of his concern over the forfeiture of assets and the money laundering legal issues he wished to pursue (<u>id.</u> at 28), ignoring the obvious implication by Hall that Hall was not aware of the option because counsel did not discuss it with him. More importantly, the United States stresses that if Hall had pursued an open plea he would not necessarily have been ensured of a two level acceptance of responsibility reduction in light of the obstruction of justice enhancement the court imposed because of Hall's attempts to influence the testimony of Redihan and an additional witness. (<u>Id.</u> at 29.) Note 4 of the Comment on United States Sentencing Guideline § 3C1.1 provides: "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the

defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." This Court is in the best position to assess whether Hall's case was "extraordinary" under this provision, see McGill, 11 F.3d at 225, but I cannot see how counsel could have made a successful argument on Hall's behalf had the issue been joined in this manner.

Hall maintains that Maselli did not encourage him to accept the United States' plea proposal. As the First Circuit explained in Parsley, counsel has an obligation to lay out the pros and cons of a plea decision but does not have the Sixth Amendment duty to urge a particular choice by his client who ultimately must make this choice. 604 F.3d at 672. The United States is right that the record, as expanded, supports a conclusion that Hall was intent on proceeding to trial if the plea agreement did not allow him to keep his principal residence on Priest Road and that there is plenty of evidence that Hall was actively engaged in these negotiations and was given information about consequences by both his attorney and the prosecutor. (See Suppl. Resp. at 30-32.)

I have considered Hall's efforts to fault Maselli for the plea-related decisions. In his affidavit Hall avers: "Maselli led me to believe there were legitimate defenses related to the forfeiture of my residence, specifically, that because it was built before the conspiracy began it should not be subject to forfeiture." (Hall Aff. ¶ 4, Doc. No. 255-1.) For an additional example he maintains: "Months before trial Maselli told him that if the Government couldn't prove conspiracy, it would not get convictions on any of the other counts charged in the indictment." (Id. ¶ 10.) He states that Maselli never advised him to enter into a plea agreement or counseled him on an open plea. (Id. ¶ 8.) Hall maintains that Maselli never provided him with a copy of

the prosecution's proposed plea agreement or the counter-offer that Maselli drafted. (Id. ¶ 11.) [6] Hall describes Maselli as being "noticeably agitated" when Hall decided to enter into plea negotiations. (Id. ¶ 12.) On January 13, 2003, when Hall learned that Redihan had entered into a plea and cooperation agreement with the United States and would testify at Hall's trial Hall immediately reconsidered pleading guilty. (Id. ¶ 9.) He indicates that Maselli spoke with the prosecutor and relayed to Hall that the prosecution was now insisting on ten years. (Id.)[7] This is basically the brunt of Hall's factual response to the United States' argument that these plea-related claims should be summarily dismissed. He acknowledges that he was aware of the overwhelming evidence of his guilt. What is more, Hall does not dispute that the fact of Redihan's cooperation and willingness to testify was also news to Maselli at the precipice of trial.

I acknowledge that Hall believes that Maselli's billing logs show a lack of research on Maselli's part for key legal issues in his action. However, of the over 440 hours itemized on Maselli's log there are numerous entries related to research on First Circuit cases addressing money laundering and forfeiture and, what seem to be, entries related to general case analysis and defense strategy. (See Doc. No. 255-3.) The logs are simply not evidence one way or the other of lapses in Maselli's representation of Hall during the plea-related negotiations of this case.

### 2. Maselli and the Post-Trial Debriefing

#### a. Claim parameters

---

[6]     A copy of the plea agreement marked Government Exhibit H can be found at Doc. No. 252-8. There is a notation of rejected on the first page.

[7]     In essence, Hall concedes that Maselli acted according to Hall's druthers when he sought an additional plea arrangement after the revelation that Redihan was to testify. Hall was not willing to take the ten-year deal. As it turned out, after the First Circuit's remand, ten years was what Hall ended up with.

### i. *Not preparing Hall for a debriefing session, particularly with respect to how Hall's cooperation might be best utilized*

Hall also presses a cluster of claims against Maselli related to his post-trial, pre-sentencing debriefing. In replying to the United States' assertion that counsel is not required to warn a client that lying to investigators about material issues is inadvisable <u>and</u> a crime, Hall describes the proffer as "a spontaneous event." (Reply at 8.) He states that any advice he received "should have been followed by an opportunity to fully prepare his answers, collect his thoughts, and overcome his anger and anxiety concerning the likely forfeiture of his principle residence. Instead, Maselli allowed the proffer session to proceed, fully aware of petitioner's despondent mood." (<u>Id.</u> at 9.) "Maselli," Hall complains, "made no attempt to stop or delay the debriefing to privately counsel his client concerning continuing his self-destructive course of conduct." (<u>Id.</u>) Hall believes that Maselli's inaction during these negotiations may have cost him a plea agreement with a consideration of a prosecution motion for substantial assistance. (<u>Id.</u>)

### ii. *Not assisting Hall during the debriefing, not attending a significant portion of the debriefing, and not objecting to the portion of the debriefing occurring in the absence of counsel*

In a related ground Hall addresses Maselli's absence from "significant portions" of his proffer. Hall acknowledges that there is no First Circuit precedent addressing the Sixth Amendment aspects of these interactions between a defendant and prosecutors and suggests that this Court should "weigh in on this important issue." (Reply at 9.) Hall all but concedes that he agreed that the questioning could continue during Maselli's absence but states that there is inadequate evidence that he was apprised of the consequences of this decision and that his agreement was knowing and intentional. (<u>Id.</u> at 10.) "Nothing in the record," Hall waxes, "suggests that Maselli made any attempt to prevent his client from the self-destructive course he

was taking, and it begs the question as to why he possibly would have allowed the debriefing to continue unabated either during that portion of the debriefing for which he was in attendance, or more importantly, during his absence." (Id.) Continuing in his theme that Maselli should have been more proactive at this stage to prevent Hall's self-sabotage, he theorizes that if "Maselli immediately pursued active cooperation and re-engaged the Government in further debriefing it would have spared his client multiple years in prison and preserved a substantial amount of assets for his family." (Id. at 11.)

### iii. *Failing to pursue the benefits of active cooperation subsequent to the debriefing*

Hall faults his attorney for failing to pursue active cooperation after his proffer. He maintains that there were attempts on behalf of the United States to have Hall return to another interview, compose himself, and cooperate. (Reply at 12.) He insists that at this juncture he was informed by Maselli that the government was not interested in anything that Hall had to say. (Id.)[8] Hall notes that none of the United States' proffered affidavits contravene his view of this performance deficiency. (Id.)

### b. **Discussion of Debriefing Claims**

The United States responds to the debriefing issue by observing: "The principle benefit to Hall that could have flowed from a successful debriefing session would have been persuading investigators that Hall was cooperating truthfully and would make a valuable witness whose cooperation against others might warrant a reduced sentence." (Suppl. Resp. at 19.) Essentially Hall's approach to his own debriefing claims is that Maselli should have protected him from inflicting self harm. I credit the United States' argument that the lack of a warning from counsel

---

[8] He states that Maselli's objections to the Pre-sentencing Investigation Report indicating that Hall planned to meet with the government on additional occasions towards possible cooperation have no relevance to what occurred prior to trial in terms of cooperation negotiations. (Id. at 13.)

not to lie to federal prosecutors and investigators is not a Sixth Amendment performance shortfall as it must be assumed that the client involved in such negotiations knows that making materially false statements is not only inadvisable but criminal. See 18 U.S.C. § 1001.[9] The Court can draw on its own familiarity with Hall's participation in this elongated criminal proceeding to make the determination of whether or not an evidentiary hearing could make any difference in Hall's favor. There is also plenty of evidence in this expanded record that Hall had many reminders of his need to be forthright while negotiating the terrain of this criminal prosecution. (See Gov. Exs. A, C.)

The United States is also correct that Hall has not sufficiently explained how a different approach by counsel in preparing for the proffer or Maselli's uninterrupted attendance during the proffer would have tangibly altered the interactions with the government representatives present in such a way as to change the outcome in Hall's favor. Hall does not include any factual assertions relevant to this dynamic in his affidavit that adequately contravenes the United States' evidence. (See Doc. Nos. 252-4, 252-13, 242-14.)[10]

### 3. Violating the attorney/client relationship by divulging privileged information to an adverse party in interest

Hall further argues that Maselli violated the attorney/client relationship when Maselli disclosed to Attorney Joe Goodman, John Redihan's defense attorney, that Hall had identified Redihan as his source for marijuana. (Reply at 13.) Hall states that he informed the court at sentencing that he panicked when Maselli advised him of this unauthorized disclosure. (Id.) Hall insists that Maselli never consulted with Hall or sought his permission to disclose the

---

[9]     This is particularly true because it is evident in Hall's case that he was quite savvy about the ins and outs of his case, one illustration of which was his testimony before this court at the sentencing hearing.

[10]     In the context of negotiations vis-à-vis a defendant who was convicted at trial, the relative worth of his proffer is not, in an ordinary case, measurably controlled by defense counsel but is very much in the hands of the prosecution and the convicted defendant as the case proceeds through sentencing and beyond.

October 7, 2002, proffer to Goodman.  (Id. at 14.)  Hall describes a commitment between his

defense attorney and Redihan and Attorney Goodman that Redihan would not be a witness at

Hall's trial and if that changed Goodman would contact Maselli.  (Id.)  Hall maintains that

Maselli relied on this commitment when moving forward with Hall's defense theory that there

was no conspiracy as charged in his indictment.  (Id. at 14.)  Hall describes this as a frivolous

defense that should not have been pursued at the cost of the benefits of post-proffer/pretrial

cooperation and plea negotiations.  (Id.)  Hall criticizes the United States for claiming in this 28

U.S.C. § 2255 proceeding that Redihan was prepared to testify against Hall before the proffer.

He opines:  "Nothing in the record, including testimony provided at trial, sentencing, or any

discovery ever disclosed by the Government has ever been introduced to support such a tall tale."

(Id. at 14-15.)  Hall thinks that this Court should consider referring the matter to the 'Office of

Professional Responsibility.'  (Id. at 15.)

     If Hall was able to provide more evidence of some sort of collusion between Maselli and

the prosecution regarding Redihan's testimony there might be a reason to scrutinize the

dynamics at play.  However, the evidence the Court has before it is that it was Hall's decision to

disclose Redihan's participation in the offenses to the United States during the proffer.  (See

Doc. No. E. at 2; Doc. No. 252-4 at 3-4.)  Hall has not presented the court with any concrete,

justiciable reason to address this complaint through the Sixth Amendment prism.  If he desires

review by the Maine State Bar Association via the Board of Overseers the onus is on him to

pursue such recourse.

### 4.  Maselli's Performance and Sentencing Concerns

     Finally, with regards to the performance of Maselli, Hall insists that Maselli gave him an

inaccurate prediction of his sentencing range and misadvised Hall that the United States was

limited in its arguments by the amount of drugs charged in the indictment.  Hall argues that Maselli's inaccurate sentencing prediction demonstrated a faulty assessment of the charges and how the, then, mandatory sentencing guidelines would apply to Hall.  (Reply at 15.)  He points out that on the day trial was to commence Maselli told the Court that Hall's sentencing exposure was in the six-year range with a high end of eight.  (Id.)  Maselli's objection to the Presentence Investigation Report (PIR) also reflects his assumption that Hall would be entitled to a two-point adjustment for acceptance of responsibility because he proceeded to trial only to preserve challenges to forfeiture and legal issues related to money laundering.  (Id. at 15-16.)  Hall notes that the uncharged quantities of marijuana played a factor in the sentence Hall received yet Maselli believed that Hall's drug quantity was limited to the quantity charged in the indictment.  (Id.)  Hall faults the United States for not acknowledging his claim that Maselli advised him that per U.S.S.G. § 1B1.8 the United States was limited vis-à-vis drug amounts possessed prior to Hall's proffer because that proffer led to Redihan's cooperation.  (Reply at 5.)

Hall maintains that if he had known that the prosecutor would have sought a sentence four times higher than proposed he would have pled guilty even though he would have forfeited issues ripe to appeal.  (Id. at 16.)  Crucial to this 28 U.S.C. § 2255 proceeding, Hall states that the January 13, 2003, trial transcript "demonstrate[s] that Maselli in fact had no occasion to contemplate any sentence beyond what he previously stated until the day trial was scheduled to commence and when the Government disclosed Redihan as a witness for the prosecution."  (Id. at 16.)

Hall's own articulation of this ground defeats his claim that there was a Sixth Amendment infirmity in Maselli's representation as it pertains to Redihan's testimony.  Hall admits that he and his attorney were blindsided by the prosecution on the day of trial.  If Hall's

real complaint is with the prosecution for its trial tactics he could have raised that issue on direct appeal.  See, e.g., Bousley v. United States, 523 U.S. 614 (1998).

## C. Attorney MacColl's Representation

### 1. Lead-up to Sentencing

One of Hall's claims in his initial motion and his amendment as his 28 U.S.C. § 2255 motion pertains to Attorney MacColl is that when he began to represent Hall prior to sentencing MacColl indicated to Hall that the prosecutor was still trying to meet with Hall and Hall wrote to MacColl expressing concern over the AUSA's motivation in meeting with him as the prosecutor had already filed objections to the PIR seeking a guideline offense level four points higher than recommended by the report preparer resulting in a minimum sentence of 235 months.  (Sec. 2255 Mot. at 22.)  MacColl responded by letter to Hall acknowledging (in response to Hall's letter to counsel arguing so) that the prosecutor may only want the meeting to discern the defense's sentencing strategy but did not have any further insight as to what the AUSA might require of Hall or what concessions might be in the offing.  (Id. at 23.)  Hall said he elected to forego the debriefing on the mistaken belief that his efforts to qualify for the safety-valve could be accomplished by providing sworn testimony at sentencing.  Hall faults MacColl for not encouraging and facilitating the pre-sentence meeting with the AUSA.  (Id.)  He laments that MacColl never advised Hall on the safety-valve requirements vis-à-vis the two-point leadership role enhancement and that, by the beginning of sentencing, Hall would have had to have fully disclosed the nature and extent of his criminal activities.  (Id.)

In his reply Hall insists that the PIR was only a recommendation and hypothesizes that the United States might have submitted objections to the report that argued, for instance, that it would not seek the leadership adjustment at sentencing thereby opening the door to the safety-

valve opportunity.  (Reply at 2.)[11]  In a conclusory fashion, Hall maintains that the United States routinely engages in fact-bargaining to induce pleas and encourage cooperation.  (Id.)  Hall does dwell again on John Redihan's testimony and what Hall describes as the prosecution's willingness to overlook the perjured testimony concerning Redihan's Rhode Island marijuana offense and its decision to ask the Court for a substantial assistance departure in Redihan's case.  (Id.)  Undermining his ineffective assistance of counsel performance showing, Hall faults the United States for failing to inform the Court in this  28 U.S.C. § 2255 proceeding that MacColl did argue for a safety-valve application at sentencing.  (Id.)[12]  He also reiterates that MacColl indicated that there could be further debriefing before sentencing but that Hall turned this prospect down.  (Id. at 2-3.)

    As with many of the previous claims discussed above, Hall defeats his own assertions by proclaiming his own reluctance to follow the advice of counsel.  It is unnecessary to reiterate that an attorney does not have a Sixth Amendment obligation to insist that his or her client pursue a particular path or shortcut through a criminal prosecution.

### 2.  Not Raising an Ineffective Assistance Challenge at Sentencing or the Direct Appeal

    Hall further theorizes that there was sufficient evidence in the record for MacColl to

---

[11]    This is an entirely conclusory – if not delusionary – description of Hall's prospects of getting such concessions from the United States given the contours of this prosecution.

[12]    In his reply memorandum Hall insists that his attorney did, in fact, argue for a safety-valve reduction and Hall takes issue with the United States' assertion that counsel legitimately decided to forego such an argument. (Reply Mem. at 2-3.)  Needless to say, this undercuts his assertion that his attorney was ineffective under the Sixth Amendment standard for failing to pursue the argument that he was entitled to a safety-valve reduction.  Hall reiterates his assertion about the importance of the timing of his disclosure in order to obtain the benefit of the safety-valve reduction.  (Id. at 3.)  It is true that MacColl did make a rather extensive argument at the sentencing hearing held on October 1, 2003, regarding the reasons for a downward departure.  (Sentencing Tr. at 312-18.) This Court rejected the arguments of counsel on this score (id. at 350-52), although it did expressly state that it took counsel's argument into consideration in arriving at his guideline range sentence (Id. at 352).  Counsel also argued for the downward departure in response to the Presentence Investigation Report.  (PIR at 25.)  Hall only received a sentence of 120 month on the amended judgment (Doc. No. 189) entered on May 24, 2007, and has completely served the imprisonment portion of his sentence.  The discussion about the safety valve reduction appears much ado about nothing at this juncture.

assert ineffective assistance of counsel claims apropos Maselli's representation at sentencing and on direct appeal. (Id. at 23-24.)[13]

Hall is completely mistaken in his assumption that either the sentencing court or the First Circuit Court of Appeals would have likely countenanced an argument by MacColl that Hall should get relief on ineffective assistance grounds. See, e.g. United States v. Downs-Moses, 329 F.3d 253, 264-65 (1st Cir. 2003) ("Typically we do not consider claims of ineffective assistance of counsel on direct appeal").

### 3. Foregoing a Statute of Limitations Argument

In his supplemental amendment to the 28 U.S.C. § 2255 motion Hall also challenges MacColl for not pressing a statute of limitations argument as to several of the counts on which he was convicted. (Am. to Sec. 2255 Mot. at 1-2., Doc. No. 213.) He explains that he did raise this concern in a pro se brief to the First Circuit Court of Appeals but the First Circuit rejected his argument because he was represented by counsel. (Id. at 2.) It is Hall's theory that if counsel had raised this preserved issue this Court would have been divested of jurisdiction over numerous counts. (Id.) Specifically, he argues that the original loans to three named individuals and the aggregate of loans to his coworkers at a former workplace were transactions outside the statute of limitations and, because the loans in question were exchanged for negotiable commercial instruments outside the statute of limitations period, those financial assets effectively became legal assets upon the expiration of the statute of limitations. (Id.) The "derivative use of funds, or acceptance of installment loan payments," Hall insists "were therefore not a criminal offense as defined by statute." (Id.) Hall acknowledges that, to the best of his knowledge, his

---

[13]       He also faults MacColl for not filing a timely motion to stay forfeiture proceedings pending the final resolution of appeals, thereby prejudicing Hall. (Id. at 24.) As stated, this is a vacuous assertion.

argument is one of first impression in this district and the First Circuit.  (Id. at 2-3; Reply at 4.)

In his reply to the United States' supplemental answer, Hall takes the United States to task for indicating that he has not adequately explained the contours of his statute of limitations defense with regards to the identified counts and has not demonstrated how any of these claims were preserved for review.  (Reply at 3.)

Per Hall's own submission there is no clear United States Supreme Court or First Circuit Court of Appeals precedent to support his legal argument as presented to this court in a threadbare fashion.  As a consequence, counsel's performance cannot be construed as infirm under Strickland's deferential Sixth Amendment performance review standard.  See, e.g. United States v. Davies, 394 F.3d 182, 190-91 (3d Cir. 2005).

## D. Brady v. Maryland, 373 U.S. 83 (1963) Disclosure Requirement and Motion for a New Trial

In his 28 U.S.C. § 2255 memorandum, Hall references the United States' opposition to his renewed motion for a new trial.  (Id. at 3.)  He indicates that there was a false declaration considered by the court stating that John Redihan was never convicted in Rhode Island of conspiracy to distribute marijuana.  (Id.)  Hall feels that this statement "could very well have" impacted this court's exercise of discretion in deciding whether or not to grant Hall's request for an evidentiary hearing on the motion for a new trial and, at least, triggered this Court's reconsideration of its prior drug quantity determination.  (Id.)  He maintains that this Court repeatedly expressed a concern with its drug quantity determination in Hall's case.  (Id. at 3.)  Hall further complains in this amendment about government misconduct with respect to providing inaccurate information to the sentencing court and having some sort of ex parte

communication with the Court.  (Id. at 3-5.)[14]  Hall also believes that the prosecution suborned

perjury from John Redihan and then argued for a substantial assistance adjustment for Redihan

vis-à-vis Redihan's sentencing.  (Id. at 3; Reply at 2.)  Hall does not connect this to counsel's

performance but raises it as a straight-up constitutional challenge.

As for the issue of the Redihan related § 2255 claims, the First Circuit explained in Hall

II:

> In his first appeal, Hall argued that the government committed a Brady
> violation by failing to disclose the full extent of the criminal history of one of its
> witnesses. This witness, John Redihan, testified against Hall pursuant to a plea
> agreement.
> Before Hall's trial began, the government disclosed to the defense that
> Redihan had been convicted in Maine in 1998 of terrorizing, theft by extortion,
> and unlawful trafficking in marijuana. It also informed the defense that Redihan
> had been convicted in Rhode Island in 1998 of possessing a firearm and
> trafficking in steroids and Percodan. Redihan admitted these convictions at Hall's
> trial.
> Following Hall's conviction, but prior to his sentencing, the probation
> office discovered additional details about Redihan's 1998 Rhode Island
> convictions. As it turned out, Redihan also had been convicted of conspiring to
> distribute marijuana and pled no contest to a charge that he possessed marijuana
> with intent to distribute.
> In Hall I, we concluded that the government's failure to disclose additional
> details regarding Redihan's 1998 Rhode Island convictions did not amount to a
> remediable Brady violation. We explained in part:
>> [E]ven assuming the government had to disclose the details of
>> Redihan's Rhode Island conviction, Hall has not shown sufficient
>> prejudice to warrant relief. Brady prejudice exists where "there is a
>> reasonable probability that the suppressed evidence would have produced
>> a different verdict." Hall elicited from Redihan, on cross-examination, that
>> he was a convicted drug dealer and that he had distributed drugs in Rhode
>> Island. Additional detail about the Rhode Island conviction would have
>> been mostly cumulative.
> Hall I, 434 F.3d at 55 (internal citation omitted).

---

[14]     It seems that Hall is referring to a supplemental brief filed with the First Circuit during his direct appeal
that references this communication between the Court and the United States.  (Id. at 3-4.)

<u>Hall II</u>, 557 F.3d at 17.  Nothing more needs to be said as to this claim.  The First Circuit has twice addressed it and ruled against Hall.

## CONCLUSION

As set forth above, I recommend that the Court grant the United States' motion for summary dismissal of this 28 U.S.C. § 2255 motion.  I further recommend that a certificate of appealability should not issue in the event Hall files a notice of appeal because there is no substantial showing of the denial of a constitutional right as contemplated by 28 U.S.C. § 2253(c)(2).

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

September 27, 2011